# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 7822 | DATE | 3/19/2001 |
| CASE TITLE | MIDWEST INK COMPANY vs. GRAPHIC INK SYSTEMS, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment as to Counts I and II of its complaint is granted [38-1] and defendant's motion for summary judgment is denied [39-1]. Plaintiff's motion to strike is denied as moot [44-1] and plaintiff's Rule 11 motion denied for failure to comply with Rule 11 requirements [46-1]. Enter Memorandum and Order. Status hearing set for 3/26/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 21 2001 date docketed | 54 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 3/20/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | CG mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MIDWEST INK COMPANY, )
)
    **Plaintiff-** )
    **Counter defendants,** )
) No. 98 C 7822
v. )
) Judge Ronald Guzman
)
GRAPHIC INK SYSTEMS, and )
DAVE SCOTT, )
)
    **Defendant-** )
    **Counter plaintiffs.** )
)

DOCKETE

MAR 21 2

## MEMORANDUM AND ORDER

Plaintiff, Midwest Ink bring a two-count motion for summary judgment against defendant David Scott pursuant to Fed. R. C. P.56. The plaintiff's claim is two-fold. First, the plaintiff alleges that the defendant was an employee and not an independent contractor with Midwest Ink. Secondly, the plaintiff maintains that as an employee, the defendant committed several acts which were in breach of his fiduciary responsibility to his employer and thus he is liable for those breaches. Defendant also moves for summary judgment claiming he is an independent contractor and as a consequence of such warrants summary judgment on his counter-complaint. For the following reasons, we grant plaintiff's motion for summary judgment (#38-1). Defendant's motion for summary judgment is denied (#39-1), plaintiff's motion to strike defendant's motion for summary judgment is stricken as moot (#44-1) and plaintiff's motion for

1

54

sanctions pursuant to Rule 11 is denied (#46-1).

## FACTS

The following information is taken from the record provided by the respective parties. Plaintiff Midwest Ink Co., a privately owned company, is generally engaged in the manufacturing and sale of ink products to commercial printers in Illinois and Wisconsin. The defendant, Dave Scott, was formerly a salesman for the plaintiff from August 1994 until he was terminated in June of 1998.

Prior to working for the plaintiff, the defendant and his father, Jim Scott, sold ink for other companies. However, in August of 1994, the defendant and his father approached the president of Midwest Ink, Frank Hannon, to discuss opportunities with the company. Based on those discussions, both the defendant and his father entered into a verbal at-will employment contract with Midwest Ink in which they agreed verbally to be commissioned salesmen for the company and receive a 15 percent commission on the sales they made. The defendant was assigned to handle sales in Wisconsin and his father was responsible for a territory in Illinois. From the outset, it appears undisputed that it was understood by both the Scott's and Midwest Ink's management that either party was free to terminate the relationship between them at any time for any reason.

Although Jim Scott was an experienced salesman, his son was new to the sales field. As such, Hannon testified that he provided the defendant with several names of customers in Wisconsin whom the company had already previous developed a business relationship. Additionally, Hannon testified that he accompanied the defendant on seven or eight sales calls during his first year and a half with the company, providing assistance and guidance on sales. By

2

all accounts, the defendant was becoming a stronger salesman during those initial months and his gross revenue for the company increased steadily.

In February of 1995, the Midwest Ink revised their employment contract with the defendant per his request. As part of their new arrangement, Hannon agreed to provide the defendant with health insurance, a car for business including its insurance and maintenance costs, and Midwest Ink agreed to carry pay worker's compensation insurance on the defendant. Additionally, the defendant mentioned he wanted to have an ink manufacturing plant opened in Wisconsin in hopes that having a plant locally would help increase overall sales for the territory. Hannon agreed to his request and financed the costs of setting up the manufacturing plant and setting up a satellite office for the defendant to conduct business which was near his home in Wisconsin.

As part of their employment arrangement, the plaintiff paid all of the costs of the satellite office in Wisconsin. The rental agreement for the office space listed "Midwest Ink" as the tenant as did the building occupancy certificate. Furthermore, the plaintiff paid the monthly rent for the space, all certification costs for the building with the city, all telephone and utilities costs, and for all office supplies connected with the operation of the defendant's office. Additionally, the plaintiff bought the defendant a company car for business. The company paid for the maintenance costs and insurance connected with that vehicle. The defendant was only responsible for fuel and minor maintenance costs.

By all accounts, the defendant appeared on paper to work solely for the plaintiff during 1994-1997. The defendant's W-2 forms for 1995-1997 indicate that the only income he reported was that from Midwest Ink. Those W-2 forms list deductions by the plaintiff for the defendant's

workers compensation coverage, FICA, and health insurance. The defendant received health coverage for himself and his wife under the company's insurance provider and his name was specifically listed on the plaintiff's employee roster which was given to the company's health carrier for coverage information. (Exh. 27) In his application for health insurance, the defendant specifically signed a declaration that he was an "employee" of Midwest Ink and listed his employer as such. (Exh. 22)

In January of 1998, without the plaintiff's knowledge, the defendant's wife, Toni Scott, formed a corporation called Graphic Ink Systems. As president of the company, Mrs. Scott testified that the company initially only sold ink products but after a few months, she purchased some mixing equipment and began manufacturing ink as well. (T. Scott Dep. 31) Mrs. Scott testified, and the defendant stated in his pleadings that he was not an agent or officer of Graphic Ink Systems, but merely a salesman for them at the same time while he was working for the plaintiff. However, in his solicitation letters to customers on behalf of Graphic Ink, his wife's newly formed corporation, the defendant noted his title as "President." (Exh. 41) Although the defendant did not received any fringe benefits from the company and was paid solely on a commission, he did have access to the company bank account as a signatory.

Between January 1998 through June 1998, Hannon testified that he noticed a drop in the defendant's sales. He confronted the defendant about this observation and was assured by him that his "customers were just slow, or were trying a competitor's ink." (Exh. 28) Neither Hannon, nor any other member of Midwest Ink's management was aware of the defendant's involvement with Graphic Ink Systems during that time. It was only after Hannon contacted one of his customers that he learned that the defendant had been selling them ink from Graphic Ink

4

Systems. Further investigation revealed that a number if not all of Graphic Ink Systems customers were former customers of Midwest Ink and were still operating through the defendant as their supplier of ink products. When Hannon confronted the defendant with this information, the defendant testified that he told him that he was a "broker" and not an employee of Midwest Ink and thus free to sell independently for anyone. Hannon disagreed and on June 29, 1998, the plaintiff terminated the defendant's employment with Midwest Ink. This suit was commenced shortly thereafter.

## DISCUSSION

Under FED.R.CIV.P. 56(c), a court should grant a summary judgement motion if "there is no genuine issue of material fact and ...the moving party is entitled to judgement as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.PRO. 56(c).

The opposing party must set forth specific facts, through affidavits or other materials, that demonstrate disputed material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). When reviewing a summary judgement motion, the court must read the facts in a light most favorable to the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 256. The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7thCir. 1994).

Under Illinois law, the "existence and scope of an agency relationship are questions of

5

fact, to be decided by the trier of fact," unless the relationship is "so clear as to be undisputed." *Rankow v. First Chicago Corp.*, 870 F.2d 356, 359 (7th Cir. 1989). However, in order to survive a summary judgment motion, the complaint and filings supporting it must allege specific facts regarding the circumstances from which the existence of the relationship can be inferred. The party alleging an agency relationship has the burden of proving it. *Matthew Roofing v. Community Bank & Trust*, 550 N.E.2d 1189, 1193, 194 Ill. App. 3d 200, 204 (1st Dist. 1990).

## A. INDEPENDENT CONTRACTOR VERSUS EMPLOYEE

Various courts have noted that the determination of whether a plaintiff is an independent contractor or an employee is a difficult task. This is because both relationships share similar elements and no specific rule has been adopted by Illinois courts applicable to the facts of all cases. While no one factor determines this issue outright, courts have cited several which they consider to be prominent in their determination. Among them is a contract between the parties, the right to discharge, the nature of the claimant's work as it relates to the employer's business, who provides the tools, material or equipment to accomplish the business task, and who has the right to control the manner in which the work is done. *Wenholdt v. Industrial Comm'n*, 447 N.E.2d 404, 409, 95 Ill.2d 76, 81 (Ill. 1983).

The Illinois Supreme Court in *Postal Tel. Sales Corp. v. Industrial Comm'n*, 37 N.E.2d 175, 177, 377 Ill. 523, 525 (Ill. 1941) set out the Illinois law applicable in determining whether a person is an independent contractor or an agent. The court defined an independent contractor as one who renders service in the course of the occupation, and represents the will of the person for whom the work is done only with respect to the result, and not the means by which that result is accomplished. *Id. citing Ferguson & Lange Foundry Co. v. Industrial Comm'n*, 179 N.E.2d 86, 89, 346 Ill. 632, 636 (Ill. 1943). Where one undertakes to produce a given result without being

in any way controlled as to the method is which he attains it, he is considered an independent contractor rather than an employee. *Id.* Thus, if the person for whom the work is being done retains the right to control the manner in which the work is to be done, the relationship of employer and employee exists. *Id.* As such, the right to control the manner of doing the work is of principal importance in determining a worker's status as an employee or an independent contractor. *Id.*; *McDonnell v. Freeman United Coal Co.*, 555 N.E.2d 993, 995, 198 Ill. App.3d 322, 325 (5th Dist. 1990).

In reviewing the evidence, it is clear that although the defendant was allowed a great deal of independence in performing his job, the plaintiff exerted a substantial amount of control over the manner in which the defendant operated. Plaintiff assigned the defendant to monitor a given territory and pursue sales within that area. In fact, upon starting his new position in 1994, the defendant was given the names and accounts of several customers the plaintiff already did business with in Wisconsin. Although defendant maintained a flexible work schedule, he was required to call in daily to the main headquarters to check for sales calls that arrived throughout the day. Additionally, Midwest Ink controlled the prices of the product being sold. In his deposition, defendant himself testified that he sold ink at prices designated by the owners of Midwest Ink. Although the defendant was authorized to deviate from the company's standard pricing index and sell at a lower price, he was only allowed to do so if necessary to make a sale, and he testified that he would have to check with officials at the head office before completing such a deal. Furthermore, the evidence indicates that the defendant did receive some training on how to perform his job, contrary to the defendant's contentions. The defendant argues that he was never formally trained noting that the plaintiff had no employee manuals providing any written instruction as to how to conduct a sale nor any written company policies referring to employees like himself. However, the evidence negates defendant's claims. The president of

Midwest Ink testified that upon initial hire, he personally trained the defendant over the course of more than a year in his sales technique, accompanying him on seven or eight sales calls. Moreover, the defendant had experience working as an ink salesman for a competitor company prior to taking the job with Midwest Ink. As such, that prior experience suggests he did not require extensive work guidance.

Defendant further argues unpersuasively that the fact that he and his father were paid solely on commission indicates his employment status as an independent contractor. While no decision of any Illinois court has been cited as applying to salesmen working upon commission, this does not mean that all commission salesmen are independent contractors, as each case depends upon the facts. *See Postal Tel. Sales Corp.*, 37 N.E.2d at 178, 377 Ill. at 529 (referring to the importance of the particularities of each case in determining employment status). Three decisions of the Appellate Court involving negligence claims held the relationship created was that of independent contractor and not of employee. *See Meece v. Holland Furnace Co.*, 269 Ill. App. 164, 166 (3d Dist. 1934); *Burster v. Nat. Refining Co.*, 274 Ill. App. 104, 106 (2d Dist. 1934); *Trust v. Chicago Motor Club*, 276 Ill. App. 289, 293 (2d Dist. 1934). In all of these cases, there was cooperation between the contracting parties, but not such as to give control over the details of the particular job. Additionally, the injured parties in these cases furnished their own instrumentality for doing business and covering a given territory.

However, this case presents a very different factual scenario than those cases. In this case, the plaintiff provided the defendant with a furnished office complete with ink mixing machines and storage facilities in Wisconsin. The plaintiff paid for the upkeep of the office, including all taxes, telephone, and utility expenses. The property lease agreement for the office and the city building occupancy certificate support the plaintiff's theory. Both documents list Midwest Ink as the tenant, not the defendant. Also, the monthly rent and the charges for the city

8

certificate were submitted and paid for by Midwest Ink. The president of the company also testified that all supplies necessary to the manufacturing and storage of ink at that office were incurred by Midwest Ink. Of importance also is the fact that the company provided the defendant with a 1991 Ford Taurus, for which the plaintiff carried insurance and reimbursed the defendant for any maintenance costs. The defendant himself testified that he was only responsible for fuel costs and minor maintenance costs. Based on those facts, it is clear that the plaintiff provided the tools, material, and equipment necessary for the defendant to perform his task.

The evidence also shows the relationship of the defendant's work to the plaintiff's business and demonstrates that the defendant's work was an essential part of the company's entire revenue. Plaintiff supplied materials and the space for the storage of the company's ink products. Defendant's sale of that product provided a necessary part of the plaintiff's business operations and, therefore, cannot be viewed in any way as separate and apart from them. Also, evidence presented by both sides indicates that the defendant was a successful salesman, and prior to the formation of Graphic Ink, provided the plaintiff with a substantial portion of their total revenue. Moreover, the defendant and his father were solely responsible for sales in Wisconsin and thus the business depended on them for any revenue coming from that territory. As such, plaintiff has demonstrated that defendant's work was interrelated to the function of Midwest Ink's business overall.

Also of importance is evidence relating to the defendant's W-2 forms. There is no dispute that the plaintiff did not withhold any taxes from defendant's weekly paychecks but this factor is not controlling. *See Ragler Motor Sales v. Industrial Comm'n*, 442 N.E.2d 903, 906, 93 Ill.2d, 66, 69 (Ill. 1983). However, on his income tax returns, the defendant specifically listed himself as an employee of Midwest Ink. This is supported by the fact that the only income the defendant

9

reported on his tax returns for 1994-1997 was from Midwest Ink. Such evidence indicates that the defendant himself viewed the relationship as one of employer-employee.

The fact that plaintiff paid worker's compensation for the defendant, deducted from his salary the costs of FICA and health insurance also indicates employee status. Indeed Illinois courts have found that evidence of worker's compensation insurance deductions from an employee's gross revenues is a weak indication that a claimant was an independent contractor. *Earley v. Industrial Comm'n*, 553 N.E.2d 1112, 1116, 197 Ill. App. 3d 309, 312 (4th Dist. 1990). Additionally, courts have placed importance on whether a claimant shares in a company's insurance benefits. *See Peesel v. Industrial Comm'n*, 586 N.E.2d 710, 715, 224 Ill. App. 3d 711, 718 (1st Dist. 1992); *Postal Tel. Sales Corp.*, 37 N.E.2d 175, 180, 377 Ill. 523, 531 (Ill. 1941). In the instant case, the defendant was insured through the plaintiff's group insurance plan. He and his wife participated in the benefits of that coverage. Indeed, the plaintiff's employee roster given to the health carrier indicates the defendant as an "employee" and thus entitled to insurance coverage. Furthermore, the defendant himself indicated on his signed insurance application that he was an "employee" of Midwest Ink. He also testified that he was assured by the company and its insurance provider that he and his wife were covered by the company's health insurance policy due to his employment status. Finally, although in his affidavit defendant claims that he sold for another company, Graphic Sciences, there is absolutely no income reported by defendant to support this assertion. Contradicted in this manner, the statement in the affidavit may raise a scintilla of evidence but not enough to establish a genuine issue of fact. It is difficult to accept the defendant's claim that he viewed his employment status as an independent contractor, when in his own words on both his health insurance application and his income tax returns he described it differently. Defendant cannot have it both ways. He cannot be an employee for income tax and health insurance benefits and an independent

contractor when it comes to duties and responsibilities. Therefore, the parties' express description of their relationship indicates an employee-employer relationship.

Thus, the critical considerations, namely, the right to control the work performed, the right to discharge, the nature of the claimant's work as it relates to the employer's business, who provides the tools, material or equipment to accomplish the business task, and the parties' description of their relationship, indicate that the defendant was a clearly an employee of Midwest Ink. Therefore, the plaintiff's motion for summary judgment on this issue is granted.

### B. BREACH OF FIDUCIARY DUTY

Plaintiff contends that because the defendant was an employee of Midwest Ink, he owed a fiduciary duty of loyalty to his employer. Defendant asserts that he was not an employee, but rather a commissioned salesman, who owed no duty to the plaintiff. In his motion, Defendant repeatedly cites to Wisconsin law when supporting his claim. However, because defendant did not raise the issue of whether Wisconsin law is applicable under the facts of this case, the issue is deemed waived and this court will follow the principles set forth in *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1029 (1941) in addressing this claim. Under *Klaxon Co.* 313 U.S. at 496, 61 S. Ct. at 1029, when a court is sitting in diversity, the court must apply the choice of law rules used by the state in which the federal district court where the case was filed sits. In this case, the case was filed in the state of Illinois, not Wisconsin, thus Illinois law shall apply. Furthermore, even if Wisconsin law did apply in this situation, our review of its substantive law regarding the fiduciary duties of employees to employers reveals that it is not substantially different from Illinois and would not create a different outcome on this issue.

Illinois law holds that employees owe a fiduciary duty of loyalty to their employer not to: (1) actively exploit their position within the corporation for their own personal benefits; or (2)

hinder the ability of the corporation to conduct the business for which it was developed. *Veco Corp. v. Babcock*, 611 N.E.2d 1054, 1062, 243 Ill. App. 3d 153, 160 (1st Dist. 1982). There is a "special fiduciary relationship" on the part of an employee towards his employer and the employee may not act inconsistent to this trust by soliciting customers for himself, enticing co-workers from his employer, or appropriating employer's property. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders*, 379 N.E.2d 1228, 1232, 205 Ill. App. 2d 124, 128 (1st Dist. 1978). As such, an employer may recover an employee's total compensation paid during the time they breached their fiduciary duties to their employer. *Id.*

Defendant contends that even if his relationship with the company was one of a fiduciary, there was no evidence he breached his obligation to the plaintiff. We disagree. There is compelling evidence by corporate officials at Midwest Ink that the defendant's employment agreement did not allow him to work for other companies at the same time. Plaintiff presented a considerable amount of oral testimony through depositions which confirmed that the defendant was only authorized to sell Midwest Ink products from his Wisconsin office and no one at the company assumed he was free to sell other items.

Additionally, the defendant claims he did not directly compete with the plaintiff's business since Graphic Ink was not a manufacturer, like Midwest Ink, and thus it was not unusual for a customer to buy from more than one ink company at the same time. However, this claim is without merit. Plaintiff's records indicate that prior to the formation of Graphic Ink in approximately January 1998, Midwest Ink's business in the defendant's territory in Wisconsin was strong. However, once the defendant began to also sell products for Graphic Ink from that company's inception until he was terminated from Midwest Ink in June of 1998, the plaintiff suffered considerable monetary losses, eventually forcing them to close their manufacturing facility in Wisconsin. Indeed, sales commission records compiled by the plaintiff indicate that

the defendant's sales commissions decreased between January 1998 through June 1998, the same time he was working for Graphic Ink as well.

But perhaps the most damaging evidence against the defendant is his own list of customers. A comparison of his customer list and that of Midwest Ink for the Wisconsin territory is identical. This indicates that the defendant was servicing and soliciting the same customers as the plaintiff. This is no small coincidence, as the defendant would have a us believe, and leads to the inescapable conclusion that the defendant solicited customers for his own personal benefit and to the detriment of his employer.

Moreover, the evidence clearly demonstrates that the defendant used information provided by the plaintiff for the benefit of plaintiff's competitor, Graphic Ink Systems in breach of his duty of loyalty to plaintiff. Several additional letters of solicitation by the plaintiff to those same customers indicate he was promoting the products of Graphic Ink instead of those of his employer and offering prices for similar products at a lower rate. Plaintiff offered testimony, and defendant did not refute it, which demonstrated that the defendant had exclusive control over the prices of ink products from Midwest Ink. With access to such pricing, defendant could make sure that Graphic Ink Systems continually outbid Midwest Ink Company when he made calls on customers to his own personal benefit.

While it is true that an employee may go so far as to form a rival corporation and outfit it for business while still employed by the prospective competitor, an employee is held accountable for breaching his fiduciary duty to his employer when he goes beyond such preliminary competitive activities and instead commences business as a rival while still employed. *McKernan Co. v. Gregory*, 623 N.E.2d 981, 993, 252 Ill. App. 3d 514, 530 (2d Dist. 1993). Although general employees may plan and outfit a competing corporation, they cannot commence operation with it until resigning from their employment. In this case, defendant's

13

business activities with Graphic Ink went beyond just investigating what his rivals were charging for their product and then trying to offer a competitive price. In this case, defendant knew the strategies and prices of his competitor because he worked for them as well. He took the information he gained from his sales position at Midwest Ink and used it in competition against his Midwest Ink while still an employee of the company. Such an action is disloyal to the employer and constitutes a breach of an employee's fiduciary duties.

Furthermore, the defendant's claim that he cannot be held accountable for a breach of a fiduciary duty because he was simply a commissioned salesman and not a corporate officer, shareholder, or director is legally incorrect. An employee need not be an officer or director to be accountable since an employee-employer relationship is based on agency. *Radiac Abrasives, Inc. v. Diamond Technology, Inc.*, 532 N.E.2d 428, 432, 177 Ill. App. 3d 628, 632 (2d Dist. 1988). Thus, since an agent must act solely for the principal in all matters related to the agency, it must refrain from competing with the principal, unless no longer bound to it. *Id.* at 404. In this case, the evidence establishes that the defendant was an employee of Midwest Ink, the plaintiff. Therefore, regardless of his position as a salesman, he owed a duty to his employer to refrain from competing with it. Having shown no evidence which negates that, the defendant is liable for any breach of fiduciary duty to his employer.

Because the undisputed evidence reveals that defendant was an employee and breached his fiduciary duty, defendant's motion for summary judgment on his counter complaint is denied as well as his motion for summary judgment as to Counts III and IV of plaintiff's complaint. Plaintiff's motion to strike defendant's motion for summary judgment is stricken as moot and plaintiff's motion for Rule 11 sanctions is denied for failure to follow the twenty-one day rule and failing to file the motion separately. *See* Fed. R. Civ. P. 11(c)(1)(A).

## CONCLUSION

For the reasons set forth above plaintiff's motion for summary judgment as to Counts I and II of its complaint is granted (#38-1) and defendant's motion for summary judgment is denied (#39-1). Plaintiff's motion to strike is denied as moot (#44-1) and plaintiff's Rule 11 motion denied for failure to comply with Rule 11 requirements (#46-1).

**SO ORDERED**　　　　　　　　　　ENTERED: 3/19/07

　　　　　　　　　　　　　　　　　　HON. RONALD A. GUZMAN